## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| MICHAEL DONNELLE O'GARRA, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | 1:14CR71-1 |
| | ) | 1:15CV576 |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

This case comes before the undersigned United States Magistrate Judge for a recommended ruling on Petitioner's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence ("Section 2255 Motion") (Docket Entry 43).[1]  For the reasons that follow, the Court should deny Petitioner's Section 2255 Motion.

### INTRODUCTION

This Court (per Chief United States District Judge William L. Osteen, Jr.) previously entered a Judgment against Petitioner imposing, inter alia, consecutive prison terms of 10 months and 19 months, as a result of his guilty plea to the respective offenses of (1) conspiracy to possess 15 or more unauthorized and counterfeit access devices, in violation of 18 U.S.C. § 1029(b)(2), and (2) possessing a means of identification of another person,

---

[1] Parenthetical citations refer to Petitioner's criminal case.

during and in relation to the access device conspiracy, in violation of 18 U.S.C. § 1028A(a)(1). (Docket Entry 38; see also Docket Entry 4 (Superseding Indictment); Docket Entry 22 (Factual Basis); Docket Entry 26 (Amended Plea Agt.); Docket Entry 47 (Plea Hrg. Tr.); Docket Entry 48 (Sent'g Hrg. Tr.).) Petitioner did not appeal. (See Docket Entries dated Nov. 20, 2014, to present (reflecting absence of notice of appeal from sentencing date forward).) He did, however, timely file his instant Section 2255 Motion. (Docket Entry 43.) The United States responded (Docket Entry 49) and Petitioner replied (Docket Entry 52). He also filed a motion asking the Court to expand the record to include a copy of a dismissal notice as to certain state charges (Docket Entry 53), which the Court granted (see Text Order dated Apr. 26, 2016).

DISCUSSION

Petitioner's Section 2255 Motion asserts these two grounds for relief:

1) "counsel was ineffective for his lack of pursuit in assuring that [P]etitioner's case held in the state of North Carolina, Williamson [sic] County, which was given to federal authorities under the 'silver platter doctrine' was in nolle prossed in the State Court prior to federal authorities assumption over the state's case" (Docket Entry 43 at 1; see also id. at 2 ("Counsel had the duty to ensure that the states [sic] case which was assumed by federal authorities was resolved prior to sentencing

2

in a federal court."), 6 ("[P]etitioner has no other option but to assert a double jeopardy claim."), 7 ("It is well established that in any event that a state's case is transferred to federal law enforcement and federal prosecution assumes custody of that case stemming from a state's arrest, a conviction for the same offense cannot be had in both state and federal court."); and

2) "counsel further failed [P]etitioner in his defense during federal court proceedings for not identifying the Supreme Court's [decision in] <u>Flores-Figueroa v. United States</u>, 556 U.S. [646] (2009)" (Docket Entry 43 at 2 (parallel citation omitted); <u>see also id.</u> at 2-3 ("Petitioner will show that the government would not be able to prove the elements of Aggravated Identity Theft was [sic] applied to [P]etitioner correctly . . . ."), 4 ("argu[ing] that the identifications used to apply aggravated identity theft were in fact fictious [sic] names made up by [P]etitioner; and that there is no actual 'real' with real meaning existing in fact or actuality or authentic person behind the names appearing on the licenses").[2]

---

[2] Petitioner's Reply apparently seeks to raise a third claim: "[T]he conviction and sentence on § 1028A(a)(1) should be VACATED as § 1028A(a)(1) and § 1029(b)(2) covers [sic] the same conduct in this sense allowing cumulative convictions and punishments . . . . The indictment in this case is multiplicitous and violative of the double jeopardy clause." (Docket Entry 52 at 6-7.) This effort cannot succeed for at least two reasons. First, "[m]embers of this Court . . . have consistently held that reply briefs may not inject new grounds . . . ." <u>Tyndall v. Maynor</u>, 288 F.R.D. 103, 108 (M.D.N.C. 2013) (internal brackets and ellipses omitted) (citing cases); <u>see also</u> <u>White v. Keller</u>, No. 1:10CV841, 2013 WL 791008, at (continued...)

<u>Claim One</u>

The first of these claims fails as a matter of law because "the Constitution established a system of 'dual sovereignty.'" <u>Printz v. United States</u>, 521 U.S. 898, 918 (1997). In the context of criminal laws, the dual sovereignty doctrine means that:

> Every citizen of the United States is also a citizen of a State or territory. He may be said to owe allegiance to two sovereigns, and may be liable to punishment for an infraction of the laws of either. The same act may be an offence or transgression of the laws of both.
>
> That either or both may (if they see fit) punish such an offender, cannot be doubted. Yet it cannot be truly averred that the offender has been twice punished for the same offence; but only that by one act he has committed two offences, for each of which he is justly punishable. He could not plead the punishment by one in bar to a conviction by the other.

<u>Bartkus v. Illinois</u>, 359 U.S. 121, 131-32 (1959) (internal citations and quotation marks omitted).

Pursuant to this constitutional design, Petitioner's federal criminal case did not involve "federal authorities assum[ing control] over the state's case [against him]" (Docket Entry 43 at

---

[2](...continued)
*3 (M.D.N.C. Mar. 4, 2013) (unpublished) (collecting cases establishing that, "when a habeas petitioner has not moved to amend his petition, the Court will not consider any allegations or arguments stemming from [a] new claim" (internal quotation marks omitted)). Second, Congress intended cumulative punishment to result from conduct that violates both Sections 1029 and 1028A and thus Petitioner's indictment and conviction on Counts One and Two present no multiplicity or double jeopardy problems. <u>See, e.g.</u>, <u>United States v. Abdur-Rahman</u>, 512 F. App'x 1, 5 (2d Cir. 2013); <u>United States v. Bonilla</u>, 579 F.3d 1233, 1244 (11th Cir. 2009).

4

1); rather, a federal grand jury in this District returned an indictment against Petitioner (notwithstanding the apparent existence of state criminal charges arising from at least some part of the same course of conduct). See, e.g., Collazo-Rivera v. United States, Civ. No. 13-1365(JAF), Crim. No. 11-534-1, 2014 WL 1011095, at *1 (D.P.R. Mar. 14, 2014) (unpublished) ("The doctrine of dual sovereignty recognizes that the federal government is not bound by the actions of state authorities . . . ."). Likewise, no federal official (much less Petitioner's counsel in his instant federal criminal case) possessed the ability to control the actions of state officials involved in any state criminal case against Petitioner. See, e.g., id. ("[The petitioner's federal] counsel could not force state prosecutors to transfer charges to the federal prosecutors. The state court's determination [of how to proceed on state charges] would be a matter for [the petitioner's] state counsel to argue in the state court.").

Simply put, contrary to the allegations of Petitioner's Section 2255 Motion, his counsel lacked any means of "assuring that [P]etitioner's case held in the state of North Carolina . . . was in nolle prossed in the State Court" (id.), whether before, during, or after the pendency of Petitioner's federal criminal case. Moreover, as the quotation above from Bartkus makes clear, under the dual sovereignty doctrine, the simultaneous maintenance of state and federal criminal cases against Petitioner did not violate

5

double jeopardy principles.[3]  As a result, Petitioner cannot prevail on his first claim for ineffective assistance of counsel. See Strickland v. Washington, 466 U.S. 668, 687-94 (1984) (holding that, to establish ineffective assistance, a petitioner must show that counsel performed below a reasonable standard for defense attorneys and that, absent such deficient performance, a reasonable probability of a more favorable outcome existed); Oken v. Corcoran, 220 F.3d 259, 269 (4th Cir. 2000) ("[C]ounsel [i]s not constitutionally ineffective in failing to [take action if] . . . it would have been futile for counsel to have done so . . . .").

## Claim Two

Petitioner's second ineffectiveness claim concerns a Supreme Court ruling (issued nearly five years before his instant federal case commenced) that Section 1028A "requires the Government to show that the defendant knew that the 'means of identification' he or she unlawfully transferred, possessed, or used, in fact, belonged to 'another person,'" Flores-Figueroa, 556 U.S. at 647. Specifically, Petitioner faults his counsel "for not identifying the Supreme Court's [decision in] Flores-Figueroa" (Docket Entry 43 at 2), and argues "that the government would not be able to prove the elements of [Section 1028A were] applied to [P]etitioner

---

[3] Notably, the dismissal notice recently submitted by Petitioner reflects that state officials ultimately dismissed the state criminal charges at issue.  (See Docket Entry 53 at 5.)

6

correctly" (id. at 2-3). This claim fails as a matter of law under Strickland, because Petitioner has not demonstrated (and, in light of the record, including most prominently his own sworn admissions, cannot demonstrate) either that he failed to appreciate the significance of Flores-Figueroa when he pleaded guilty or that any further action by his counsel could have altered the result here.

To begin, the Superseding Indictment charged Petitioner with, inter alia, the following offenses:

## COUNT ONE

From on or about October 1, 2010, continuing up to and including on or about February 16, 2011, the exact dates to the Grand Jurors unknown, in the County of Durham, in the Middle District of North Carolina, and elsewhere, [Petitioner], MAJIED LEWIS, and divers other persons, known and unknown to the Grand Jurors, knowingly, willfully and unlawfully did conspire, combine, confederate and agree to commit offenses in violation of Title 18, United States Code, Section 1029(a), that is:

1. To knowingly and with intent to defraud possess fifteen (15) or more unauthorized and counterfeit access devices which affected interstate commerce, in violation of Title 18, United States Code, Section 1029(a)(3); and

2. To knowingly and with intent to defraud possess device making equipment which affected interstate commerce, in violation of Title 18, United States Code, Section 1029(a)(4).

## METHOD AND MEANS

1. It was a part of the conspiracy that [Petitioner] and MAJIED LEWIS obtained bank account numbers of other persons.

2. It was a further part of the conspiracy that [Petitioner] and MAJIED LEWIS re-encoded or caused to be

7

<u>re-encoded these account numbers onto the magnetic strips of gift, debit and credit cards</u>.

3. It was a further part of the conspiracy that [Petitioner] and MAJIED LEWIS obtained counterfeit driver's licenses purporting to be from California in alias names but bearing the pictures of [Petitioner] and MAJIED LEWIS.

4. It was a further part of the conspiracy that [Petitioner] and MAJIED LEWIS obtained gift, debit and credit cards in the same name as the alias counterfeit driver's licenses.

5. It was a further part of the conspiracy that [Petitioner] and MAJIED LEWIS possessed laptops with software to utilize credit card encoders.

6. <u>It was a further part of the conspiracy that [Petitioner] and MAJIED LEWIS possessed approximately 154 unauthorized bank account numbers which had been re-encoded onto gift, debit and credit cards</u>.

7. <u>It was a further part of the conspiracy that [Petitioner] and MAJIED LEWIS possessed approximately 154 re-encoded counterfeit gift, debit and credit cards</u>.

OVERT ACTS

In furtherance of the aforesaid conspiracy and to effect the objects and purposes thereof, [Petitioner] and MAJIED LEWIS and other co-conspirators, known and unknown to the Grand Jurors, committed numerous overt acts in the Middle District of North Carolina, and elsewhere, including but not limited to the following:

8. On or about October 12, 2010, in Williamston, North Carolina, in the County of Martin, in the Eastern District of North Carolina, [Petitioner] was found in possession of a counterfeit Illinois driver's license in the name of "James Harris" but bearing the picture of [Petitioner].

9. On or about October 12, 2010, in Williamston, North Carolina, in the County of Martin, in the Eastern District of North Carolina, [Petitioner] was found in

8

possession of a Visa credit card in the name of "James Harris."

10. On or about February 16, 2011, in the County of Durham, in the Middle District of North Carolina, [Petitioner] was found in possession of counterfeit California driver's license in the name of "Joey Clark" but bearing the picture of [Petitioner].

11. On or about February 16, 2011, in the County of Durham, in the Middle District of North Carolina, [Petitioner] was found in possession of a Mastercard credit card and Visa credit card in the name of "Joey Clark."

12. On or about February 16, 2011, in the County of Durham, in the Middle District of North Carolina, MAJIED LEWIS was found in possession of two counterfeit California driver's licenses in the name of "Jaylen Rhoads" and "Shawn Robinson" but bearing the picture of MAJIED LEWIS.

13. On or about February 16, 2011, in the County of Durham, in the Middle District of North Carolina, MAJIED LEWIS was found in possession of a Mastercard credit card in the name of "Shawn Robinson."

14. <u>On or about February 16, 2011, in the County of Durham, in the Middle District of North Carolina, [Petitioner] and MAJIED LEWIS were found in possession of approximately 154 re-encoded counterfeit gift, debit and credit cards containing unauthorized credit card account numbers</u>.

15. On or about February 16, 2011, in the County of Durham, in the Middle District of North Carolina, [Petitioner] and MAJIED LEWIS were found in possession of computers containing account numbers and software designed to re-encode credit and gift cards.

All in violation of Title 18, United States Code, Section 1029(b)(2).

COUNT TWO

From on or about October 1, 2010, continuing up to and including on or about February 16, 2011, the exact dates

9

of the Grand Jurors unknown, in the County of Durham, in the Middle District of North Carolina, and elsewhere, [Petitioner] and MAJIED LEWIS, during and in relation to a felony enumerated in Title 18, United States Code, Section 1028A(c), to wit: conspiracy to possess fifteen or more unauthorized and counterfeit access devices, in violation of Title 18, United States Code, Section 1029(b)(2), as alleged in Count One and incorporated by reference herein, <u>knowingly possessed without lawful authority a means of identification of another person, that is, bank account numbers which belonged to persons with the initials C.B., L.F., J.V., S.M. and C.M.</u>; in violation of Title 18, United States Code, Sections 1028A(a)(1) and 2.

(Docket Entry 4 at 1-5 (emphasis added).)

Petitioner thereafter agreed in writing to "enter a voluntary plea of guilty to Counts One (object one) and Two of the Superseding Indictment" (Docket Entry 26, ¶ 2), and, in so doing, admitted that "[t]he nature of these charges and the elements of the charges, which must be proved by the United States beyond a reasonable doubt before [he] can be found guilty thereof, ha[d] been explained to him by his attorney" (<u>id.</u>). The Amended Plea Agreement further documented Petitioner's acknowledgment that:

> [b]y voluntarily pleading guilty to Counts One (object one) and Two of the Superseding Indictment herein, [he] <u>knowingly waives and gives up his constitutional rights</u> to plead not guilty, <u>to compel the United States to prove his guilt beyond a reasonable doubt</u>, not to be compelled to incriminate himself, to confront and cross-examine the witnesses against him, <u>to have a jury or judge determine his guilt on the evidence presented</u>, and other constitutional rights which attend a defendant on trial in a criminal case.

(<u>Id.</u>, ¶ 3 (emphasis added).) Lastly, Petitioner's Amended Plea Agreement memorialized that he would "plead guilty to Counts One

10

(object one) and Two of the Superseding Indictment herein because he is, in fact, guilty . . . ." (Id., ¶ 4.)

The United States also filed a Factual Basis in support of Petitioner's guilty plea, relating of note:

> [During a traffic stop in Durham on February 16, 2011, an] officer found approximately 44 debit/gift cards in [Petitioner's] pants pocket. . . .
>
> The officer found approximately 46 debit/gift cards in LEWIS's pants, jacket and wallet. The officer also found a counterfeit California license in LEWIS's wallet with the name of "Shawn Robinson," but bearing the picture of LEWIS. . . .
>
> The officer then searched the vehicle and found another California driver's license in the front passenger area. The counterfeit California license had a picture of [Petitioner] but bore the name "Joey Clark." A debit card in that same name was located as well near the license. . . .
>
> A search of the passenger area produced 87 more debit/gift cards and a laptop computer. Another laptop was found in the trunk. Various receipts were also found in the vehicle.
>
> [Petitioner] and LEWIS were arrested . . . . At the police station, a second counterfeit California driver's license was found on the person of LEWIS in the name of "Jaylen Rhoads," but bearing the picture of LEWIS.
>
> The police and the United States Secret Service ran the seized cards through a card reader and determined that 152 of the cards had been re-encoded with account numbers that did not match the number embossed on the front of the card.
>
> [Petitioner] waived his Miranda rights and stated he purchased the cards in Richmond for $375.00 from an individual whose name he did not know.
>
> Durham police obtained state search warrants for two computers and cell phones found during the search. A

11

Toshiba laptop was linked to LEWIS by Facebook messages
and personal documents.  A series of what appeared to be
account numbers were located on the laptop.  The laptop
also contained a manual for a device used to re-encode
magnetic strips on credit or debit cards.  The laptop
also contained evidence that LEWIS had purchased credit
card numbers from an online site called "The Dump Store."
One of the re-encoded access devices found on
[Petitioner's] person had been used shortly before the
stop in Durham.  A vanilla Visa gift card embossed with
XXX8916 was re-encoded with XXX3430, which belonged to an
individual whose initials are A.N. of Decatur, Texas.  In
the vehicle, police found a receipt from "Farm Fresh," a
grocery store, located in Norfolk, Virginia, dated
February 14, 2011.  The receipt showed a total of $217.39
being spent to purchase gift cards using account XXX3430,
which belonged to A.N.

Another access device found in [Petitioner's] possession
had an embossed number XXX0692 on the front of the card.
However the Vanilla Visa gift card actually was
re-encoded with account XXX8642 belonging to an
individual whose initials are J.B., of Denton, Texas.
This card was used at Uno Chicago Grill in Virginia
Beach, Virginia, on February 14, 2011.

An access device found on the person of LEWIS contained
an embossed number XXX7120 but was re-encoded with
XXX4830 belonging to an individual whose initials are
W.W., of Krum, Texas.  Police also found a Walmart
receipt in the vehicle showing the card was used on
February 12, 2011, in Lake City, South Carolina.  The
receipt was signed "Shawn Robs" which is similar to the
name Shawn Robinson, which was one of the counterfeit
driver's licenses in the possession of LEWIS.

LEWIS was also in possession of an access device which
contained an embossed number of XXX0761 on the front of
the card.  However, the card was re-encoded with account
number XXX2520, which belongs to an individual whose
initials are A.F., of Krum, Texas.  The card was used on
February 14, 2011, at a Shell station in Virginia Beach,
Virginia.

The re-encoded account numbers found in the vehicle were
issued by banks such as Branch Banking and Trust, First
United Bank and Trust and T.D. Bank . . . .

An analysis of the cellular phone used by LEWIS revealed . . . [that, o]n February 3, 2011, another individual sent a text to LEWIS's phone saying 'Chic sent <u>a list of bins</u>.' <u>Bank identification numbers or 'bins' refer to account numbers issued by banks</u>.

(Docket Entry 22 at 3-7 (emphasis added).)

Petitioner subsequently appeared before the Court (per Chief Judge Osteen) and averred, in pertinent part, that:

1) he "<u>underst[oo]d the indictment and the charge or charges against [him]</u>" (Docket Entry 47 at 7 (emphasis added));

2) he and his attorney "<u>discussed any possible defenses</u> [he] might have to these charges" (<u>id.</u> (emphasis added));

3) he was "<u>fully satisfied with the services of [his attorney] and his [attorney's] counsel, representation, and advice</u>" (<u>id.</u> (emphasis added));

4) he "had enough time to review the plea agreement and discuss it with [his attorney]" (<u>id.</u> at 9);

5) he "underst[oo]d all the terms of [his] plea agreement" (<u>id.</u>);

6) no one "in any way attempted to force [him] to plead guilty against [his] wishes" (<u>id.</u> at 13);

7) he "underst[oo]d all of the possible penalties and consequences of this plea of guilty" (<u>id.</u> at 18);

8) he "underst[oo]d each of [his] rights" related to trial, including "<u>to plead not guilty to any or all charges</u>," "<u>to have [his] guilt or innocence determined by a jury</u>," to be "presumed

13

innocent," to require the United States "<u>to prove [his] guilt of</u> <u>the crime charged beyond a reasonable doubt, which means the United</u> <u>States is required to prove each and every element of the crime</u> <u>charged beyond a reasonable doubt before [he] could be found</u> <u>guilty</u>," "to the assistance of counsel" (appointed, if he could not "afford" one), "to see and hear all of the witnesses called to testify," "to confront those witnesses, and [to have his counsel] . . . cross-examine each of those witnesses," "to issue subpoenas and to compel the attendance of witnesses to testify in [his] defense," including at government expense "if [he] cannot afford the cost," "<u>to testify in [his] own defense</u>," "to refuse to testify," "<u>to present evidence</u>," as well as "not to present any evidence" (<u>id.</u> at 21-22 (emphasis added)); and

    9) he "<u>underst[oo]d that by entering this plea of guilty</u> <u>. . . there w[ould] be no trial and he w[ould] have waived [his]</u> <u>right to a trial as well as these other rights associated with a</u> <u>trial</u>" (<u>id.</u> at 22-23 (emphasis added)).

    Petitioner's plea colloquy then concluded as follows:

THE COURT: Now, [Petitioner], in your case, as I mentioned earlier, you're seeking to enter a plea of guilty to the offenses charged in Counts One and Two of the indictment. The elements of the offense charged in Count One of the indictment, that is, the facts the United States would be required to prove beyond a reasonable doubt at any trial, include all of the following:
One, that you and one or more persons conspired to commit an offense under 18 USC Section 1029(a), that is, to knowingly and with intent to defraud possessed [sic] 15

14

or more unauthorized or counterfeit access devices which
affected interstate commerce in violation of Title 18,
United States Code, Section 1029(a)(3).
And, two, one or more of you engaged in conduct in
furtherance of that offense.
Do you understand the elements of the offense charged in
Count One Object One?

[Petitioner]: Yes, sir.

THE COURT: With respect to Count Two, which charges a
violation of 18 USC Section 1028A(a)(1), the elements of
that offense include all of the following:
One, that you knowingly possessed the means of
identification of another person as described in the
indictment.
And, two, you acted without lawful authority.
And, three, you knew the means of identification you
unlawfully possessed, in fact, belonged to another
person.
And, four, you acted during and in relation to a felony
as listed in 18 USC Section 1028A(c) and described in the
indictment.
Do you understand the elements of the offense charged in
Count Two?

[Petitioner]: Yes, sir.

THE COURT: And do you further understand that by
pleading guilty to the offenses charged in Counts One and
Two of the indictment, you are admitting to the elements
of the offense -- those two offenses as those facts are
described in the indictment?

[Petitioner]: Yes, sir.

THE COURT: Do you have any questions about anything
we've been over before I call upon you to enter your plea
in this case?

[Petitioner]: No, sir.

THE COURT: In Case No. 1:14CR71-1, United States versus
[Petitioner], how do you plead to the offense charged in
Count One Object One of the indictment?

[Petitioner]: Guilty.

15

THE COURT: And <u>how do you plead to the offense charged in Count Two</u> of the indictment?

[Petitioner]: <u>Guilty</u>.

THE COURT: <u>Are you pleading guilty because you are, in fact, guilty</u>?

[Petitioner]: <u>Yes, sir</u>.

THE COURT: Then it is the finding of this Court in Case No. 14CR71-1 that [Petitioner] is fully competent and capable of entering an informed plea. <u>The Court further finds that [Petitioner] is aware of the nature of the charges and the consequences of his plea, and his plea of guilty is a knowing and voluntary plea</u>.
Mr. Davis, <u>a written factual basis has been filed in [Petitioner's] case</u>. Have you received a copy of that and reviewed it with him?

MR. DAVIS: I have, Your Honor.

THE COURT: Are there any objections?

MR. DAVIS: No, Your Honor.

THE COURT: [Petitioner], do you agree with that? First of all, <u>have you reviewed the factual basis</u>?

[Petitioner]: <u>Yes, sir</u>.

THE COURT: And <u>do you generally agree with those facts</u>?

[Petitioner]: <u>Yes, sir</u>.

THE COURT: All right. Then <u>I will find in [Petitioner's] case that his plea of guilty is supported by an independent basis in fact containing each of the essential elements of the offense</u>. His plea is, therefore, accepted, and [Petitioner] is now adjudged guilty of the offense -- offenses charged in Count One Object One of the superseding indictment and Count Two of the superseding indictment.

(<u>Id.</u> at 23-26 (emphasis added).)

16

To sum up then:

1) Counts One and Two of the Superseding Indictment explicitly charged Petitioner (along with a co-conspirator) with (A) obtaining bank account numbers that belonged to other people, (B) re-encoding those bank account numbers onto counterfeit gift, debit, and credit cards, and (C) possessing more than 150 such re-encoded, counterfeit cards containing bank account numbers of other people (which bank account numbers Count Two expressly identified as a "means of identification of another person");

2) the Factual Basis filed in support of Petitioner's guilty plea to Count One (Object One) and Count Two documented that (A) Petitioner and a co-conspirator possessed more than 150 counterfeit debit and gift cards re-encoded with bank account numbers that belonged to other people, (B) at least one of those re-encoded counterfeit cards possessed by Petitioner had recently been used to purchase gift cards, and (C) a text message received by a co-conspirator confirmed the receipt of bank account numbers; and

3) Petitioner admitted in writing and/or under oath, after consulting with his attorney (with whom he was "fully satisfied"), (A) that he understood the elements of Count One (Object One) and Count Two (including that Count Two required proof he "knew the means of identification [he] unlawfully possessed, in fact, belonged to another person"), (B) that he understood his guilty plea relieved the United States of its duty to prove those elements

17

beyond a reasonable doubt and constituted an admission to each such element, as well as (C) that he agreed with the Factual Basis and was, "in fact, guilty" of Count One (Object One) and Count Two.

The foregoing record defeats any claim that Petitioner's counsel committed professional negligence by not "identifying" Flores-Figueroa (in some unspecified fashion) and/or that anything his counsel might have said about Flores-Figueroa could have altered the outcome of this case. In particular, at the time of his guilty plea, Petitioner indisputably understood that (as provided in Flores-Figueroa) to obtain a conviction on Count Two at trial the United States would have to prove beyond a reasonable doubt that he knew bank account numbers re-encoded on counterfeit cards he possessed belonged to other people. Petitioner further understood that, by pleading guilty to Count Two, he admitted such knowledge and waived his right to compel the United States to establish that matter before a jury. With that understanding, Petitioner voluntarily pleaded guilty to Count Two and admitted the accuracy of the Factual Basis, which supported his sworn admissions, including as to his knowledge that the counterfeit cards he possessed contained bank account numbers of others.

As a neighboring court confronted with a similar claim from a petitioner "that his attorney . . . provided ineffective assistance of counsel for failing to object to the [Section 1028A] conviction under *Flores-Figueroa* . . . [and that] the Government failed to

18

provide proof that the elements of the crime were [satisfied]," Wallace v. United States, Crim. Action No. 2:10-150-PMD, 2011 WL 5357842, at *3-4 (D.S.C. Nov. 7, 2011) (unpublished), observed:

> Petitioner chose to waive his right to a jury trial, where the government would have been required to show that Petitioner knew that the means of identification belonged to another person. Instead, he chose to plead guilty and admitted to knowingly using [a means of] identification [] of another. Therefore, Petitioner's claim that his counsel was ineffective for failing to object under *Flores-Figueroa*, fails.

Id. at 4; see also Scantlebury v. United States, Nos. 5:09CR254D, 5:10CV590D, 2012 WL 5364004, at *3-4 (E.D.N.C. Oct. 30, 2012) (unpublished) ("[The petitioner] contends that counsel failed to familiarize himself with the current law and advise him that, pursuant to . . . *Flores-Figueroa* . . . a jury might find him not guilty of violating section 1028A if he pleaded not guilty and proceeded to trial. . . . [The petitioner] asserts that neither the plea agreement, nor anything else in the record, establishes that [he] knew that the identification he possessed actually belonged to another person/individual. . . . [The petitioner's] guilty plea to each element of section 1028A(a)(1) bars his claim." (internal brackets and quotation marks omitted)); Amara v. United States, Nos. RWT10CV1372, RWT10CV1385, RWT08CR548, RWT09CR106, 2010 WL 2998663, at *3 (D. Md. July 22, 2010) (unpublished) ("[The p]etitioner contends . . . his counsel's unawareness of . . . *Flores-Figueroa* constituted ineffective assistance . . . . The

statement of facts attached to the plea agreement . . ., however, clearly states that [the p]etitioner's actions were 'knowing and deliberate.' Additionally, these statements were repeated by the Government at the guilty plea hearing and [he] affirmed their veracity. Because the Government stated that it could produce sufficient facts to constitute identity theft, and [the p]etitioner conceded such in his plea agreement and at his guilty plea hearing, [his] final ground for relief also fails." (internal citations omitted)), <u>appeal dismissed</u>, 426 F. App'x 206 (4th Cir. 2011).

Indeed, controlling authority dictates that the Court deny the instant claim in light of Petitioner's averments at his guilty plea hearing: "A defendant's solemn declarations in open court affirming a plea agreement carry a strong presumption of verity, because courts must be able to rely on the defendant's statements made under oath during a properly conducted Rule 11 plea colloquy." <u>United States v. Lemaster</u>, 403 F.3d 216, 221 (4th Cir. 2005) (internal brackets, citations, ellipses, and quotation marks omitted). "Thus, in the absence of extraordinary circumstances, . . . a district court should, without holding an evidentiary hearing, dismiss any § 2255 motion that necessarily relies on allegations that contradict [a defendant's] sworn statements." <u>Id.</u> at 221–22. Petitioner's Section 2255 Motion identifies no such extraordinary circumstances; instead, it seeks to (mis)direct the Court's attention away from his averment that he knew the

20

counterfeit cards he possessed contained re-encoded bank account numbers of others, by asserting "that the identifications used to apply aggravated identity theft were in fact <u>fictious [sic] names made up by [P]etitioner</u>; and that there is no actual 'real' . . . or authentic person behind <u>the names appearing on the licenses</u>." (Docket Entry 43 at 4 (emphasis added).)  As demonstrated above, for purposes of the "means of identification" element of Section 1028A, Count Two relied <u>not</u> on the name(s) on any false driver's license(s) Petitioner possessed, <u>but rather</u> on the bank account numbers re-encoded onto the counterfeit cards he possessed.[4]

---

[4] Petitioner's Reply likewise misleadingly focuses on his false driver's license (<u>see</u> Docket Entry 52 at 8 ("[T]he question arise [sic]: (1) did [P]etitioner know that the identification he possessed was a ficticious [sic] name? Yes; (2) Does that create identity theft if the name is invented and not that of an actual person? No.")), but also makes other conclusory and inconsistent statements apparently intended to contradict the sworn admissions Petitioner made at his guilty plea hearing.  For example, as to the point (made by the United States) that officers found on Petitioner's person "'44 debit or gift cards that had been re-coded [sic] with the bank account numbers belonging to others'" (<u>id.</u> at 5 (quoting Docket Entry 49 at 4)), the Reply states:  "this is true" (<u>id.</u>), but then declares "the cards were gift cards not debit cards" (<u>id.</u>), before immediately reversing course and acknowledging that Petitioner "possessed [a] debit card" (<u>id.</u>).  Similarly, despite having agreed with the United States that the cards he possessed held re-encoded "'bank account numbers belonging to others'" (<u>id.</u>; <u>see also</u> <u>id.</u> at 6 (conceding that "the gift cards turned out to be re-coded cards containing personal account numbers from other persons"), the Reply elsewhere maintains that "[n]ot one of the gift cards contained any personal and/or identifying information.  All gift cards contained the normal tracking numbers provided by the company used for retail stores inventory and tracking purposes shown as if we would purchase a gift card or prepaid debit card from our neighborhood Walmart."  (<u>Id.</u> at 8-9.)
(continued...)

Because Petitioner has not presented extraordinary circumstances that would justify ignoring his sworn admission that he knew bank account numbers re-encoded on counterfeit cards he possessed actually belonged to other people, the Court should deny this ineffective assistance claim under <u>Lemaster</u>. Finally, even if Petitioner convinced the Court to overlook his statements under oath in his plea colloquy, he still "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." <u>Hill v. Lockhart</u>, 474 U.S. 52, 59 (1985). Petitioner has made no

---

[4](...continued)

The suggestion that the cards in question did not contain stolen bank account numbers in their magnetic strips (or even that Petitioner believed such) flies in the face of the undisputed showing in the Factual Basis (endorsed under oath by Petitioner) that he used those cards to purchase gift cards. If Petitioner believed the cards at issue held no re-encoded bank account numbers and that he merely possessed gift cards of the sort sold by retailers with a set amount of funds encoded on the magnetic strip, no reason would have existed for him to use those cards to buy other gift cards. To the contrary, such conduct only makes sense if understood as the culmination of a criminal plan to convert stolen bank account numbers into cash or its equivalent. Vacillating and implausible attempts at exculpation of this sort simply cannot overcome Petitioner's averments in his colloquy with the Court admitting each and every element of Count Two, including that he knew counterfeit cards he possessed contained re-encoded bank account numbers that belonged to other people. <u>See</u> <u>United States v. Ngala</u>, No. 4:11CR30-1, 2014 WL 1017629, at *3 (W.D. Va. Mar. 17, 2014) (unpublished) ("[The p]etitioner's current statement that he never knew the imprinted access devices contained stolen credit card account numbers belonging to real people is patently frivolous and false when compared to his sworn testimony . . . .").

22

such showing.  (See Docket Entries 43, 52.)[5]  The Court thus should

deny the instant claim on that basis as well.

## CONCLUSION

Petitioner has not established an entitlement to relief under

Section 2255.

---

[5] To the extent Petitioner intimates the Court could grant relief not by striking his guilty plea and setting the case for trial, but rather by simply "resentenc[ing him] after VACATION of the violation of [Section] 1028(A)" (Docket Entry 43 at 8), he miscomprehends the mechanics of federal criminal procedure.  At base, "Flores-Figueroa is a sufficiency of the evidence case." McClain v. United States, Nos. 3:10CV102G(BH), 3:05CR332G, 2011 WL 147572, at *7 (N.D. Tex. Jan. 14, 2011) (unpublished); see also Watts v. United States, Nos. 1:08CR103-6-RWS-CCH, 1:10CV3848-RWS-CCH, 2011 WL 3652279, at *5 (N.D. Ga. July 27, 2011) (unpublished) ("[The petitioner argues] that the Government failed to prove that she knew that the identity used to commit bank fraud actually belonged to another person.  Such knowledge, however, can be based on circumstantial evidence or even common sense."), recommendation adopted, 2011 WL 3652244 (N.D. Ga. Aug. 18, 2011) (unpublished). Consistent with that notion, Petitioner contends that, in light of Flores-Figueroa, "the government would not be able to prove the elements of [Section 1028A] . . . ."  (Docket Entry 43 at 2.)  The Court cannot resolve that question without a trial (or at least a stipulation about all the evidence the United States would present to a jury), because "[t]here is no summary judgment procedure in criminal cases.  Nor do the rules provide for a pre-trial determination of sufficiency of the evidence."  United States v. Critzer, 951 F.2d 306, 307 (11th Cir. 1992); accord United States v. Guerrier, 669 F.3d 1, 4 (1st Cir. 2011); United States v. Moore, 563 F.3d 583, 586 (7th Cir. 2009); United States v. Ferro, 252 F.3d 964, 968 (8th Cir. 2001); United States v. Jensen, 93 F.3d 667, 669 (9th Cir. 1996); United States v. Gadsden, Crim. No. WDQ-11-302, 2013 WL 3776994, at *3 (D. Md. July 17, 2013) (unpublished); United States v. Witasick, No. 4:07CR30, 2008 WL 1924023, at *2 (W.D. Va. Apr. 28, 2008) (unpublished); see also United States v. Souder, Nos. 1:08CR136-1 & 2, 1:08CR275-1 & 2, 2009 WL 88919, at *7 (M.D.N.C. Jan. 12, 2009) (unpublished) (discussing cases in which federal courts have considered evidentiary proffers in connection with pretrial challenges to criminal charges).

**IT IS THEREFORE RECOMMENDED** that Petitioner's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence (Docket Entry 43) be denied without issuance of a certificate of appealability.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

April 29, 2016